**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| Tarkett USA Inc., | § | |
| | § | |
| *Plaintiff,* | § | Civil Action No.: 1:24-cv-457 |
| | § | |
| v. | § | **COMPLAINT** |
| | § | |
| Jennifer Maynard | § | **JURY TRIAL DEMANDED** |
| | § | |
| *Defendant.* | § | |

**ORIGINAL COMPLAINT AND APPLICATION FOR TERMPORARY**
**RESTRAINING ORDER AND PRELIMINARY AND PERMANENT INJUNCTIONS**

Plaintiff Tarkett USA Inc. ("Plaintiff or "Tarkett") brings this action against its former employee Defendant Jennifer Maynard ("Maynard") to stop Maynard's violations of her contractual obligations and to prevent the misappropriation of Tarkett's trade secret information. Among other things, Maynard is a party to an agreement in which she agreed not to use or disclose Tarkett's trade secrets and confidential information post-separation. She also agreed to refrain from soliciting certain Tarkett customers and employees for eighteen months after the termination of her employment. Tarkett respectfully asks this Court to enforce Maynard's contractual obligations and enjoin Maynard from unlawfully sharing Tarkett's trade secrets and soliciting Tarkett's customers and employees. In support of its Original Complaint and Application for Temporary Restraining Order and Preliminary and Permanent Injunctions against Defendant Jennifer Maynard, Tarkett respectfully alleges and shows the Court as follows:

## A.    THE PARTIES

1.    Plaintiff Tarkett USA Inc. is a corporation duly organized and existing under the laws of Delaware with its principal place of business at 30000 Aurora Road, Solo, OH 44139.

2.      Defendant Jennifer Maynard is an individual who resides at 1147 Grant Circle, Cicero, IN 46034 in Hamilton County.

## B.      JURISDICTION AND VENUE

3.      The Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332 because diversity of citizenship exists and the amount in controversy exceeds seventy-five thousand dollars ($75,000.00), exclusive of interest and costs.

4.      Also, a federal cause of action is asserted under 18 U.S.C. § 1836(b) and, therefore, jurisdiction is proper under 18 U.S.C. § 1836(c).

5.      Finally, the Court has supplemental jurisdiction over the state-law claims that are asserted in this action pursuant to 28 U.S.C. § 1367(a).

6.      Venue is proper pursuant to 28 U.S.C. § 1391(b) because Maynard resides in this judicial district and division, and because the majority of events forming the basis for this suit occurred in this district and division.

## C.      FACTUAL BACKGROUND

**Tarkett, its Trade Secrets, and Confidential Information**

7.      After 140 years of experience, the Tarkett family of companies has become a world-wide leader in flooring and sports surfaces, from vinyl & linoleum and carpet to indoor and outdoor sport surfaces. Globally, the Tarkett family of companies has 12,000 employees and sales in over 100 countries, due to its close relationships with customers and suppliers. Those customers include hospitals, hotels, educational facilities, sporting stadiums, workplaces, and residential homes.

8.      Critical to its success, Tarkett has developed customer lists; information concerning its customers and their needs; pricing information; statistical information about its sales; and relationships with customers.

9.     Tarkett has expended significant time, effort, and money to develop and protect information related to its clients, client lists, and pricing structure; to develop and protect customer relationships and contacts; to develop and protect its goodwill; and to develop its client base.

10.     Tarkett's trade secrets, including, but not limited to, its customer lists, pricing information, and sales statistics, are a valuable asset of Tarkett, and they derive independent economic value, actual and potential, from not being generally known to and not being readily ascertainable by other persons who could obtain economic value from this information. Knowing this information would provide a competitive advantage to a competitor of Tarkett or the opportunity to obtain a competitive advantage over Tarkett.

11.     Tarkett has taken reasonable steps to protect its trade secrets, including, but not limited to, requiring employees with access to these materials to sign confidentiality agreements, having policies regarding the use and non-disclosure of confidential information, restricting access to confidential information, maintaining a secure computer network, and limiting access to its network on a password-protected basis.

12.     The customer list, pricing information, and sales statistics described above constitute trade secrets within the meaning of applicable law.

**Maynard's Employment with Tarkett and her Employment Agreement**

13.     Tarkett has grown both organically and through a series of mergers and acquisitions. In one such acquisition, Tarkett acquired Tandus Group, Inc. ("Tandus"), a Georgia-based flooring company, in 2012. After Tarkett acquired Tandus, Tandus operated as a wholly owned subsidiary under the Tarkett corporate umbrella.

14.     On or around February 16, 2015, Maynard began her employment with Tandus, Tarkett's wholly owned subsidiary.

15.    Because Tandus needed to provide Maynard access to its confidential and trade secret information so that she could properly do her job, Tandus, as a condition of her employment, required Maynard to enter into an employment agreement (the "Employment Agreement," Ex. 1), which specifically provides that Maynard would have access to confidential information. Specifically, within the Employment Agreement, Maynard acknowledged that she "will occupy a position of trust and confidence with Company, and will become familiar with Company's trade secrets and with other proprietary and Confidential Information concerning Company." Employment Agreement, §2(a).

16.    Maynard learned Tarkett's trade secrets and confidential information, among other ways, through her specialized training, conducted by Tarkett.

17.    The Employment Agreement contains expansive language that describes the categories of confidential information that Tandus and Tarkett protect. Specifically, the Employment Agreement defines "Confidential Information" as including "Company's trade secrets and other non-public information relating to Company, including, without limitation, information relating to customer identities, potential customers, programs, strategies, analyses, marketing plans, pricing, profit margins and other information developed or used by Company that is not known generally to the public and that gives Company an advantage in the marketplace." Employment Agreement, §2(a).

18.    Within the Employment Agreement, Maynard also acknowledged that she "will learn and develop Confidential Information relating to Company's customers and Company's servicing of those customers servicing of those customers." Employment Agreement, §2(b). She further agreed "that Company has near-permanent relationships with its customers" and recognized that "Company's relationships with its customers are extremely valuable, that the

protection of Company's customer relationships is essential to preserve the value and long-term stability of Company, and that the Company has a legitimate protectible interest in the Confidential Information and in Company's customer relationships." Employment Agreement, §2(b).

19.     Maynard further agreed not to reveal to anyone such information and that she would "not use in any way any Confidential Information of the Company, other than in connection with [her] word for the Company." Employment Agreement, §3.

20.     Maynard promised to restrain from certain activity (the "Restricted Activities") "for eighteen (18) months after the date that [her] employment is terminated, regardless of the reason for the termination." Employment Agreement, §4(a).

21.     She promised not to "solicit, accept business from or do business with, or in any way interfere with Company's relationship with, any customer with whom the Employee had any contact on behalf of the Company, or whose account Employee supervised on behalf of Company." Employment Agreement, §4(c)(i).

22.     Maynard additionally promised not to "solicit, hire, or otherwise induce to leave the employ of Company, any current employee of Company or anyone who was employed by the Company during the twelve month period prior to Employee's termination." Employment Agreement, §4(c)(ii).

23.     Outside of the 18-month time period, the Restricted Activities are also geographically bound to "the district in which Employee worked in the sales for the Company." Employment Agreement, §4(b).

24.     By the Employment Agreement's own terms, the Restricted Activities were tailored to be reasonable in scope. For example, Maynard explicitly acknowledged and agreed:

> "[T]he covenants sets for in Sections 3 and 4 of [the Employment Agreement] are reasonable and necessary for the protection of Company's business interests."

Employment Agreement, §6.

25. Within the Employment Agreement, Maynard stated that:

> [I]rreparable injury will result to Company if Employee breaches them, and that in the event of Employee's actual or threatened breach of such provisions, Company will have no adequate remedy at law. Employee thus agrees that in the event of any actual or threatened breach of Section 3 or 4 of this Agreement, the Company shall be entitled to immediate injunctive and other equitable relief, without the necessity of posting of pond. Nothing contained herein shall be construed as prohibiting the Company from pursuing any other remedies available to it for breach or threatened breach, including the recovery of damages.

Employment Agreement, §6.

26. The Employment Agreement is supported by and protects legitimate business interests—including, but not limited to, Tarkett's confidential and/or trade secret information, substantial customer relationships, and interest in maintaining a competent and specialized workforce.

27. The restrictions contained in the Employment Agreement are reasonably necessary for the protection of the business and goodwill developed and owned by Tarkett, and Tarkett will sustain great and irreparable loss and damage if Maynard is allowed to violate the covenants set forth therein.

28. During her employment with Tarkett, Maynard had access to and knowledge of Tarkett's confidential and trade secret information.

29. Specifically, Maynard was given a list, created and developed by Tarkett, of clients to solicit.

30.     Maynard experienced nearly a decade of success by utilizing Tarkett's client lists. Tarkett recognized Maynard as a Quota Club member—a recognition for sales persons that hit their targets.

31.     Maynard was also given access to confidential information about Tarkett's pricing and margins.

32.     Maynard had access to confidential information about Tarkett's sales statistics not only in the territories where she worked, but also throughout the United States.

33.     While working in Tarkett's sales department, Maynard had direct contacts and developed substantial relationships with Tarkett's clients and key client contacts.

34.     During the eighteen (18) months prior to her resignation, Maynard was assigned the following territory: the state of Indiana.

35.     In fulfilling her duties, Maynard acquired sensitive information about the customers in her territories, including, but not limited to, information about the volume and timing of their flooring and surfacing needs, their budgets, and what prices they were willing to pay for such goods.

36.     Maynard developed relationships with the customers and potential customers that she dealt with directly.

**Tandus Merges with Tarkett and Maynard Continues her Employment**

37.     On January 1, 2019, Tarkett merged with Tandus. *See* Exs. 2-4. Tarkett and Tandus are and were Delaware Corporations, and the entities merged pursuant to Section 251 of the General Corporation Law of the State of Delaware. *See* Ex. 2.

38.     Section 259 of the Delaware Code states:

all property, *rights*, privileges, powers and franchises, and all and every other interest shall be thereafter as effectually the property of the surviving or resulting corporation as they were of the several and respective constituent corporations.

Del. Code Ann. tit. 8, § 259 (emphasis added). Indiana and Georgia[1] law are not inapposite. *See* O.C.G.A. § 14-2-1106; Ind. Code § 23-1-40-6.

39.     Accordingly, the surviving company, Tarkett, adopted the right to enforce the Employment Agreement.

40.     Subsequent to the 2019 merger and without objection, Maynard continued to accept the benefits of the Employment Agreement. Maynard received Tarkett's trade secrets and confidential information, retained the same job title (Account Executive), benefits and 401K eligibility, pay structure, and role.

**Maynard Resigns and Repudiates her Future Obligations under the Employment Agreement**

41.     Maynard announced her departure in February 2024. *See* Ex. 5. Post-employment, Maynard intends to work for one of Tarkett's direct competitors, Milliken & Co. Tarkett and Maynard agreed that her final day with Tarkett would be March 8, 2023.

42.     On February 27, 2024, after Maynard announced her departure, Tarkett sent Maynard a letter reminding her of her post-separation obligations—i.e. the Restricted Activities and her promise not to disclose confidential information. *See* Ex. 5. The letter asked Maynard to review the Employment Agreement and stated that Tarkett would "not hesitate to fully protect its interests in the event [she] violate[s] or threaten[s] to violate any of the[] covenants or [her] other obligations." Ex. 5. Tarkett attached the Employment Agreement to the February 27th letter.

---

[1] The Employment Agreement contains a Georgia choice of law and venue provision. Indiana and Georgia law are not inapposite for any of the issues in this case, and Plaintiff has chosen to given Maynard the benefit of litigating in her local jurisdiction under the law of the state where she resides.

43.     Maynard responded through counsel two days later. *See* Ex. 6. She argued that her employment with Tandus ended in January of 2021, and her post-separation obligations expired in June 2023. *See* Ex. 6. She threatened to violate the Employment Agreement "[u]nless [Tarkett] produce[d] an employment contract or restrictive covenant agreement between Ms. Maynard and Tarkett by" March 8, 2024. *See* Ex. 6. The letter threatens that, after March 8, 2024, Maynard will proceed as if no post-separation obligations exist. *See* Ex. 6.

44.     On March 5, 2024, Tarkett responded through counsel and pointed to applicable statutes and case law clearly demonstrating that after a merger, the surviving company may enforce restrictive covenants between one of the merged companies and its employees. *See* Ex. 7. Tarkett asked Maynard to acknowledge that she may not share Tarkett's confidential information or solicit Tarkett's customers and/or employees. *See* Ex. 7.

45.     Maynard replied two days later, on March 7, 2024. *See* Ex. 8. In relevant part, Maynard stated that, while she "appreciate[s] [Tarkett's] survey of the law on mergers, [the] letter omits mention of a key and very important fact – the merger of Tandus and Tarkett predated Ms. Maynard's employment by Tandus – by two and one-half years." Ex. 8. Of course, that is inaccurate, since Maynard began working for Tandus in 2015, and Tandus merged with Tarkett in 2019. *See* Exs. 1-4. Maynard then reiterated that she believes that she does not "owe[] any enforceable post-employment obligations to Tarkett." Ex. 8.

46. Maynard accordingly believes that she may disclose Tarkett's trade secrets, use Tarkett's confidential information to benefit her new employer, solicit Tarkett's customers, and solicit Tarkett's employees. Indeed, Maynard threatened to "proceed accordingly." Ex. 5.

9

47.    Upon information and belief, Milliken & Co. hired Maynard to take advantage of the trade secret and confidential information Maynard learned while employed by Tarkett, and to take advantage of the relationships that Maynard developed with customers as a Tarkett employee.

48.    Upon information and belief, once Maynard begins her employment with Milliken & Co., she will contact customers of Tarkett that she had contact with on behalf of Tarkett or customers of Tarkett whose account she supervised on behalf of Tarkett.

49.    Upon information and belief, Maynard plans to use Tarkett's trade secret and confidential information for her own benefit and for the benefit of Milliken & Co.

50.    Upon information and belief, Maynard plans to solicit customers withing the geographic scope of her non-solicit agreement, on behalf of Milliken & Co.

51.    Maynard does not have permission to use or share Tarkett's trade secret and confidential information.

52.    Upon information and belief, Maynard is threatening to use and disclose Tarkett's trade secret information in interstate commerce.

53.    Maynard's illegal actions will cause Tarkett to lose: (1) the value of its trade secrets that Tarkett has expended extensive time, effort, and money to create and design; (2) business from its clients and prospective clients developed by Tarkett; (3) valuable business opportunities that Tarkett has expended extensive time, effort, and money to identify and research; and (4) its employees, whom Tarkett has trained and with whom Tarkett has shared its confidential information. These clients, employees, trade secrets, and confidential information are essential to Tarkett's operations. The value of these losses cannot be calculated at this time, but the harm far exceeds $75,000.

54.     Maynard's threatened conduct is in direct violation of the Employment Agreement, in exchange for which Maynard received continued employment and compensation, in addition to access to confidential information and specialized training. To prevent the irreparable harm to Tarkett that would occur from Maynard's solicitation of clients, Tarkett asks this Honorable Court to, among other things, enjoin Maynard from calling on Tarkett's actual and potential customers, soliciting Tarkett's employees, and using or disclosing Tarkett's confidential and trade secret information.

55.     Furthermore, Maynard is threatening to misappropriate trade secrets belonging to Tarkett. To prevent the irreparable harm to Tarkett that would result from the use and disclosure of its trade secrets by its direct competitor, Tarkett asks this Honorable Court to enjoin Maynard from using or disclosing its trade secret information.

### D.     CAUSES OF ACTION

**Count I**
**Breach of Contract**

56.     Tarkett realleges and incorporates by reference the allegations contained in the preceding paragraphs of the Complaint as if fully set forth herein.

57.     The Employment Contract is a binding contract between Tarkett (through its merger with Tandus) and Maynard.

58.     Tarkett performed its contractual obligations by providing Maynard with employment, training, and access to, and knowledge of, Tarkett's confidential and trade secret information.

59.     Upon information and belief, Maynard has failed to fulfill her contractual obligations by soliciting Tarkett's customers and disclosing or using Tarkett's trade secret and confidential information.

60.     Alternatively, Maynard's actions constitute repudiation and anticipatory breach of the Employment Agreement. She repudiated the Employment Agreement twice and has unequivocally threatened to conduct the Restricted Activities.

61.     As a direct and proximate result of Maynard's breach of contract, Tarkett will suffer damages in an amount which cannot be determined with certainty at this time. However, Tarkett stands to lose: (1) the value of its trade secrets that Tarkett has expended extensive time, effort, and money to create and design; (2) business from its clients and prospective clients developed by Tarkett; (3) valuable business opportunities that Tarket has expended extensive time, effort, and money to identify and research; and (4) its employees, whom Tarkett has trained and with whom Tarkett has shared its confidential information.

**Count II**
**Misappropriation of Trade Secrets under 18 U.S.C. § 1836 *et. seq.***

62.     Tarkett realleges and incorporates by reference the allegations contained in the preceding paragraphs of the Complaint as if fully set forth herein.

63.     As detailed above, Maynard had access to and knowledge of Tarkett's trade secret and confidential information. Maynard is now employed by a direct competitor of Tarkett, in the same type of position that she held at Tarkett, and in the same territory that she previously worked in on behalf of Tarkett. Maynard is threatening to misappropriate Tarkett's trade secrets and confidential information to the detriment of Tarkett and for the commercial advantage of Maynard and Milliken & Co. in violation of law.

64.     Maynard acquired the trade secrets through her employment with Tarkett. Maynard is aware that the disclosure of such trade secrets violates Maynard's duty to maintain the secrecy of such information.

65.     Tarkett stands to lose the following as a result of such misappropriation: (1) value of its trade secrets and confidential information that Tarkett has expended extensive time, effort, and money to create and design; (2) business from its clients and prospective clients developed by Tarkett; and (3) valuable business opportunities that Tarkett has expended extensive time, effort, and money to identify and research. These clients, trade secrets, and confidential information are essential to Tarkett's operations.

66.     Furthermore, Maynard is threatening to use Tarkett's trade secret information in interstate commerce.

## E.      REQUESTS FOR INJUNCTIVE RELIEF

### Application for Temporary Restraining Order and Preliminary and Permanent Injunctions

67.     Tarkett realleges and incorporates by reference the allegations contained in the preceding paragraphs of the Petition as if fully set forth herein.

68.     Tarkett seeks a temporary restraining order and injunctive relief under the Federal Rules of Civil Procedure and the Defend Trade Secrets Act. *See* FED. R. CIV. P. 65; 18 U.S.C. § 1836(b)(3).

69.     As shown, there is a substantial likelihood that Tarkett will prevail on the merits of its claims in this action.

70.     Additionally, Tarkett will suffer irreparable injury to its business as a result of Maynard's use and disclosure of Tarkett's trade secret information, and Maynard's breach of the Employment Agreement, if such behavior is allowed to occur.

71.     Specifically, if Maynard is not enjoined, Tarkett stands to lose: (1) the value of its confidential information and trade secrets that Tarkett has expended extensive time, effort, and money to create and design; (2) business from its clients and prospective clients developed by

Tarkett; (3) valuable business opportunities that Tarkett has expended extensive time, effort, and money to identify and research; and (4) its employees, whom Tarkett has trained and to whom Tarkett has shared its confidential information. These clients, employees, and confidential information are essential to Tarkett's operations and competitive advantage. The total amount of such damage is not readily quantifiable or measurable, and will likely be unrecoverable, leaving Tarkett with no adequate legal remedy. Therefore, Tarkett requests that a temporary restraining order, preliminary injunction, and permanent injunction issue.

72.    The issuance of an injunction herein will in all respects serve the public good, as companies who have developed trade secrets, goodwill, customer relationships and contacts through the expenditure of substantial time and resources should be protected, and employees should not be permitted to profit from breaches of their agreements. Likewise competitors and employees should not profit from the misappropriation of trade secrets.

73.    Maynard will not suffer undue hardship or loss as a result of the issuance of the temporary restraining order and preliminary injunction because this request is limited in nature. Tarkett only seeks to enjoin Maynard from illegally utilizing Tarkett's trade secrets and confidential information and to enjoin Maynard from violating the terms of the valid and enforceable Employment Agreement.

74.    Tarkett requests that a temporary restraining order, preliminary injunction, and permanent injunction be granted, enjoining and restraining Maynard, and, as applicable, her collective and respective agents, servant, employees, attorneys and those persons in active concert or participation with them, from:

   i)  directly or indirectly utilizing or disclosing Tarkett's confidential information or trade secrets,

ii)        directly or indirectly, on behalf of herself or any third party, company or entity, solicit, accept business from or do business with, or in any way interfere with Tarkett's relationship with (i) any person, company or entity who was a customer or potential customer of Tarkett and (ii) whom Maynard had direct contact with regarding Tarkett's products at any time during Maynard's employment with Tarkett for eighteen months starting on March 8, 2024;

iii)       directly or indirectly, on behalf of herself or any third party, (i) raiding, hiring, soliciting, or attempting to persuade any then-current employee of Tarkett or any person who was an employee of Tarkett during the twelve months preceding the termination of Maynard's employment with Tarkett, who possesses confidential information of Tarkett, to leave the employ of Tarkett in order to compete with products or services of Tarkett; (ii) interfering with the performance by any such persons of their duties for Tarkett; or (iii) communicating with any such persons for the purposes described in items (i) and (ii) in this paragraph, for eighteen months starting on March 8, 2024;

iv)       destroying, concealing, or disposing of any documents, paper, or electronic files, or other materials obtained from or belonging to Tarkett, or containing Tarkett's proprietary information or trade secrets.

v)        altering, deleting, removing or writing over in any respect any documents, computer files (including, but not limited to, e-mails, hard drives, disc drives, zip drives), data, drafts, text messages, or other things relating in any way to Tarkett, including information regarding Tarkett's clients, employees, property or business

information, until such time as those materials may be turned over in discovery or until further order of the Court; and

vi)    destroying, concealing, or disposing of any documents, paper, electronic files, emails, text messages, or other materials relating to Maynard's employment by Milliken & Co. or any other competitor of Tarkett.

## F.    REQUEST FOR PERMANENT INJUNCTIVE RELIEF

75.    Tarkett realleges and incorporates by reference the allegations contained in the preceding paragraphs of the Complaint as if fully set forth herein.

76.    Tarkett asks the Court to set its application for permanent injunctive relief for a full trial on the issues in this Complaint and, after the trial, to issue a permanent injunction against Maynard.

## G.    PRAYER

77.    For these reasons, Tarkett respectfully requests that the Court do the following:

A.    Issue a permanent injunction enjoining Maynard, and all persons acting by, through and in concert with Maynard, from:

(i)    directly or indirectly utilizing or disclosing Tarkett's confidential information or trade secrets;

(ii)    directly or indirectly, on behalf of herself or any third party, company or entity, solicit, accept business from or do business with, or in any way interfere with Tarkett's relationship with (i) any person, company or entity who was a customer or potential customer of Tarkett and (ii) whom Maynard had direct contact with regarding Tarkett's products at any time during Maynard's employment with Tarkett for eighteen months starting on March 8, 2024;

(iii)    directly or indirectly, on behalf of herself or any third party, (i) raiding, hiring, soliciting, or attempting to persuade any then-current employee of Tarkett or any person who was an employee of Tarkett during the twelve months preceding the termination of Maynard's employment with Tarkett, who possesses confidential information of Tarkett, to leave the employ of Tarkett in order to compete with products or services of Tarkett; (ii) interfering with the performance by any such persons of their duties for Tarkett; or (iii) communicating with any such persons for

the purposes described in items (i) and (ii) in this paragraph, for eighteen months starting on March 8, 2024;

(iv)     destroying, concealing, or disposing of any documents, paper, or electronic files, or other materials obtained from or belonging to Tarkett, or containing Tarkett's proprietary information or trade secrets.

(v)     altering, deleting, removing or writing over in any respect any documents, computer files (including, but not limited to, e-mails, hard drives, disc drives, zip drives), data, drafts, text messages, or other things relating in any way to Tarkett, including information regarding Tarkett's clients, employees, property or business information, until such time as those materials may be turned over in discovery or until further order of the Court; and

(vi)     destroying, concealing, or disposing of any documents, paper, electronic files, emails, text messages, or other materials relating to Maynard's employment by Milliken & Co. or any other competitor of Tarkett.

B.     Issue a temporary restraining order and preliminary injunction, enjoining and restraining Maynard as described above, until a final hearing a decision on the merits of the claims for a permanent injunction;

C.     Order Maynard to return all property of Tarkett;

D.     Award Tarkett compensatory damages against Maynard, including actual damages, according to proof at trial, for all damages suffered by Tarkett as a result of Maynard's unlawful acts as set forth above;

E.     Award Tarkett the costs of this action, including reasonable attorney's fees; and

F.     Award Tarkett such other and further relief as this Court deems just and proper.


Respectfully submitted,

**TAFT STETTINIUS & HOLLISTER LLP**
One Indiana Square, Suite 3500
Indianapolis, Indiana 46204-2023
(317) 713-3500
(317) 713-3699 (fax)

*Melissa A. Macchia*
Melissa A. Macchia
IN Bar No. 29920-49
mmacchia@taftlaw.com


**WINSTON & STRAWN LLP**


*John Sanders*
John C.C. Sanders, Jr. (PHV motion forthcoming)
Texas Bar No. 24057036
jsanders@winston.com
Alex Ingoglia (PHV motion forthcoming)
Texas Bar No. 24135809
aingoglia@winston.com

2121 N. Pearl Street, Suite 900
Dallas, Texas 75201
(214) 453-6500
(214) 453-6400 (fax)

**COUNSEL FOR PLAINTIFF TARKETT USA INC.**

131964034v1

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| Tarkett USA Inc., | § | |
| | § | |
| *Plaintiff,* | § | Civil Action No.: 1:24-cv-457 |
| | § | |
| v. | § | **COMPLAINT** |
| | § | |
| Jennifer Maynard | § | **JURY TRIAL DEMANDED** |
| | § | |
| *Defendant.* | § | |

---

## VERIFICATION

---

STATE OF OHIO

COUNTY OF CUYAHOGA

My name is Eric Daliere, and I am the Chief Executive Officer of Plaintiff Tarkett USA Inc. in the case captioned above. I have reviewed the allegations in Paragraphs 1, 7-45, 51, 53 made in the Original Complaint and Application for Temporary Restraining Order and Preliminary and Permanent Injunctions. I have personal knowledge of the allegations therein, and I know them to be true.

I declare under penalty of perjury that the foregoing is true and correct. Executed on March 11, 2024.

_____
Eric Daliere
Chief Executive Officer
Tarkett USA Inc.